United States Court of Appeals
For the Eighth Circuit
No. 21-1585

Abdirisak Dahir Jama,

*Petitioner*,

v.

Merrick B. Garland, Attorney General of the United States,

*Respondent.*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 20, 2021
Filed: March 30, 2022

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Abdirisak Jama petitions for review of a decision of the Board of Immigration Appeals. The decision upheld the denial of his application for deferral of removal under the Convention Against Torture. Jama argues that the Board erred by declining to review an immigration judge's adverse credibility determination, failing adequately

to explain its reasons for denying relief, and failing adequately to consider arguments raised in his appeal. We deny the petition for review.

I.

Jama is a native and citizen of Somalia who was admitted to the United States as a refugee in 1996. In April 2019, the Department of Homeland Security charged that Jama was subject to removal from the United States under 8 U.S.C. §§ 1227(a)(2)(A)(ii) and (iii) and 1227(a)(2)(B)(i), based on convictions for three aggravated felonies, a violation of a law relating to a controlled substance, and two crimes involving moral turpitude.

Jama conceded that he was removable, but sought relief from removal on several grounds, including under the Convention Against Torture. He claimed that he feared torture by the Somali government or by non-governmental groups acting with the acquiescence of the Somali government. He asserted that these groups would torture him for several reasons: he is a convert to Christianity, he bears visible tattoos on his skin, he speaks limited Somali, he has a criminal record, and he suffers from mental illnesses. He expressed fear that members of his own clan, the Awrtable, would torture him because of his Christian beliefs. He also claimed that the Somali government would torture him because his brother joined the Islamic State of Iraq and Syria (ISIS) and his step-brother joined a Somali-based terrorist group known as al-Shabaab. Jama further alleged that because he is a member of the Awrtable clan, members of other clans in Somalia would torture him.

After a hearing, the immigration judge (IJ) denied Jama's application for deferral of removal under the Convention Against Torture. The IJ found that Jama's testimony was not credible, and determined "furthermore" that his claim of likely torture was based on "speculation." The IJ also concluded that there was insufficient evidence to conclude that Jama would be tortured based on his membership in the

-2-

Awrtable clan, and insufficient evidence that the Somali government would acquiesce in torture at the hands of al-Shabaab. Finally, the IJ found that it was not likely that Jama would be harassed or tortured due to his minor diagnoses of depression, anxiety, and post-traumatic stress disorder, because he could function in society with no outward signs of a mental illness or condition. The IJ ultimately concluded that Jama had not met his burden of establishing that it was more likely than not that he would be tortured by the Somali government or by a group acting with the acquiescence of the Somali government.

Jama appealed to the Board. He argued that the IJ made an erroneous credibility determination, applied an improperly heightened burden of proof, failed to consider all issues raised, and erred in finding that Jama had not met his burden of proof. The Board adopted and affirmed the IJ's decision that Jama failed to establish eligibility for deferral of removal under the Convention "on the merits," and declined to address the IJ's alternative finding that Jama was not credible. The Board determined that Jama's fear of torture by the Somali government or al-Shabaab was speculative, concluded that the IJ had not misconstrued Jama's claims, and decided that the IJ applied the correct burden of proof.

II.

Jama argues in this court that the Board erred by declining to address the IJ's adverse credibility finding. He contends that the credibility finding was not an alternative ground for denying relief, but rather was central to the IJ's decision. Therefore, he contends, the Board erred by purporting to affirm on an alternative ground that was not present in the IJ's decision.

We agree with the Board that the IJ's decision includes an alternative determination that Jama's claim would fail even if his testimony were believed. The IJ first found it was not believable that Jama would disclose to Somali authorities that

he was a Christian. The decision continued, however, that "if it were to come to light that he had converted from Islam to Christianity," then Jama would at most "face harassment by members of the community." The IJ concluded that harassment is not "tantamount to torture," and that "the whole concept that the Somali government will jail and torture him due to being Christian is a supposition upon supposition that rests on conjecture, speculation, and the Court cannot make those leaps to determine that he would be either jailed or tortured." The IJ reiterated that even if the Somali government could "make that connection," (*i.e.*, learn that Jama is a Christian), the IJ could not make "a supposition upon supposition to hypothesize or speculate that the government would jail and torture him due to being Christian." This latter discussion proceeded on the premise that the Somali government would learn of Jama's conversion to Christianity. It is therefore an alternative basis for decision that is independent from whether Jama credibly testified that he would disclose his religious conversion.

Jama also points to a line in the IJ's discussion of his mental condition to support his theory that the IJ necessarily relied on credibility. In that discussion, the IJ stated that Jama's "allegation that he would be singled out and tortured for being mentally ill is simply not credible." In context, however, it is clear that the IJ was not referring to the credibility of Jama's testimony: whether Jama would be tortured based on mental illness is not a fact that turned on the truthfulness of Jama's testimony. The IJ accepted that Jama suffered from depression, anxiety, and post-traumatic stress disorder. In the cited passage, the IJ simply concluded that because Jama could function in society without any outward signs of a mental illness or condition, he failed to establish that Somali authorities were likely to torture him based on his mental condition. For these reasons, the Board permissibly construed the IJ's decision to rest on alternative grounds, and it was not necessary for the Board to pass on the merits of each alternative rationale. *Kebede v. Gonzales*, 481 F.3d 562, 563-64 (8th Cir. 2007).

Jama also claims that the Board's decision does not provide enough reasoning to allow for meaningful judicial review. He contends that the Board did not adequately identify the issues on which he failed to carry his burden or explain its reasons for rejecting his claims. The Board, however, adopted the IJ's decision that Jama failed to meet his burden of proof. *See R.K.N. v. Holder*, 701 F.3d 535, 537 (8th Cir. 2012). The IJ's decision, in turn, addressed Jama's several theories asserting a likelihood of torture and explained why he failed to meet his burden of proof. Taking the two decisions together, the agency provided an adequate basis for judicial review.

In a related point, Jama argues that the Board failed adequately to address two of his arguments on administrative appeal—namely, that the IJ failed (1) to assess the likelihood of torture by other members of the Awrtable clan or (2) to address the likelihood that the Somali government would acquiesce in torture by non-governmental actors because members of al-Shabaab had infiltrated the government. The Board rejected these arguments by reference to the IJ's decision, saying it was unpersuaded that the IJ misconstrued Jama's claims, and that the IJ's "thorough and detailed analysis" considered all relevant evidence and applied the correct legal standards. The IJ identified Jama's claim that "the Awrtable clan would torture him," including that it would do so with government acquiescence because he was Christian, spoke pidgin Somali, and had tattoos, but found the claim unavailing. The IJ also determined that because the Somali government is fighting al-Shabaab and has labeled al-Shabaab a terrorist organization, the government's inability "to eradicate al-Shabaab in Somalia" did not indicate that the government would acquiesce to torture. The absence of a specific mention of alleged "infiltration" of the government by al-Shabaab does not mean that the agency failed to consider Jama's claim. *See Hassan v. Rosen*, 985 F.3d 587, 590 (8th Cir. 2021) (holding that alleged infiltration by al-Shabaab was insufficient to establish likely acquiescence in torture); *Moallin v. Barr*, 980 F.3d 1207, 1210 (8th Cir. 2020) (same). The Board's incorporation of the IJ's decision is sufficient to allow for meaningful judicial review.

Jama does not argue independently that the evidence in his favor is so strong that it would compel any reasonable adjudicator to find that he is likely to be tortured if he were removed to Somalia. Having concluded that Jama's procedural objections to the Board's decision are without merit, we deny the petition for review.

_____